1

2

3

4

5

6              UNITED STATES DISTRICT COURT

7              NORTHERN DISTRICT OF CALIFORNIA

8

9    STEVEN JAFFE,
                                              No. C 05-4439 PJH (PR)
10                    Petitioner,
                                              **ORDER DENYING PETITION
11       vs.                                  FOR WRIT OF HABEAS
                                              CORPUS**
12   RICHARD KIRKLAND, Warden,

13                    Respondent.
     _____/
14

15        This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. §

16   2254.  The court ordered respondent to show cause why the writ should not be granted

17   based on petitioner's eleven cognizable claims.  Respondent filed an answer and a

18   supporting memorandum of points and authorities, and lodged exhibits with the court.

19   Petitioner responded with a traverse.  Thereafter, the court granted petitioner's request to

20   file supplemental briefing regarding his eighth claim in light of the United States Supreme

21   Court decision in *Cunningham v. California*, 127 S. Ct. 856 (2007).  Respondent also filed

22   supplemental briefing regarding this issue.  For the reasons set out below, the petition will

23   be denied.

24                              **BACKGROUND**

25        In 2003, a jury in Alameda County Superior Court convicted petitioner of one count

26   each of possession of methamphetamine and cocaine, one count each of possession of

27   cocaine while armed with a 9 millimeter gun and while armed with a .25 caliber handgun,

28   and one count each of being an ex-convict in possession of a 9 millimeter gun, a .25 caliber

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   handgun, and ammunition.  The jury also found that petitioner had previously suffered a

2   serious felony conviction.  The trial court sentenced petitioner to a total term of nine years

3   and four months in state prison.

4       Petitioner appealed the state court judgment and concurrently filed a habeas petition

5   in the California Court of Appeal.  The California Court of Appeal struck the conviction and

6   the stayed sentence on the count of possession of cocaine on the grounds that it was a

7   lesser-included offense of another conviction, and otherwise affirmed the judgment.  The

8   California Court of Appeal summarily denied the petition for a writ of habeas corpus.

9   Petitioner then filed two petitions for review in the California Supreme Court, one seeking

10  review of the California Court of Appeal's decision on direct appeal and one seeking review

11  of the California Court of Appeal's summary denial of the habeas petition.  The California

12  Supreme Court initially granted review of the California Court of Appeal's decision on direct

13  appeal, but subsequently, on September 7, 2005, dismissed its decision granting review.

14  The California Supreme Court also summarily denied review of the habeas petition.

15      Petitioner does not dispute the following facts, which are excerpted from the opinion

16  of the California Court of Appeal:

17                                          TRIAL EVIDENCE

18  On Tuesday, January 15, 2002, at about 6:30 p.m., a passerby, Gaddi Ittah, found defendant unconscious in a parking lot at a strip mall in Sunnyvale.  Defendant was face down on the ground with his feet in the open

19  driver's door of a running BMW.  Since defendant was unresponsive, Ittah called 911 on his cellular telephone.  Other passersby tried to rouse

20  defendant and determined that he was drunk.

21  Paramedics and Sunnyvale public safety police and fire officers responded to the emergency call.  A fire official found defendant slumped over inside the car, which was no longer running.  Defendant, who smelled

22  strongly of alcohol, regained consciousness and vomited more than once.

Lieutenant Randal French, a fire officer, asked if anyone had the keys

23  to the car.  A bystander handed Lieutenant French the keys, saying they were taken from the car's ignition.

24  Officer David Miller, the crime scene investigator, retrieved defendant's wallet from defendant's back pocket.  Officer Miller handed the wallet to

25  Officer Kathryn Debeaubien, who looked through it for identification.  She found defendant's driver's license and credit cards bearing defendant's name.

26  Defendant's address was in Topanga in southern California.  Officer Debeaubien did not look closely at the contents of the wallet, which was

27  bulging with numerous papers.  Officer Debeaubien handed the wallet to Officer Christopher Kassel, who quickly perused it before handing it back to

28  Officer Miller.

United States District Court

For the Northern District of California

1   Defendant was arrested for public intoxication and transported to a
2   hospital in an ambulance.  After searching the car, Officer Kassel gave the
    car keys to the company that towed the BMW.

3       The BMW was registered to a Thomas Miller who lived in southern
    California.  Before the car was towed, Officers Debeaubien and Kassel did an
4   inventory search.  The car looked lived in, with numerous articles of clothing
    and papers strewn about the passenger compartment.  In the car's trunk were
    more clothing and 12 to 15 pieces of mail addressed to defendant.

5       On the floor of the front passenger seat were empty vodka bottles and
6   a briefcase.  Opening the briefcase revealed that it contained a nine-
    millimeter semiautomatic handgun loaded with seven rounds in its magazine,
7   a .25-caliber semiautomatic handgun loaded with six rounds in its magazine,
    a .177 -caliber pellet gun, and 58 loose rounds of ammunition, consisting of
8   33 nine-millimeter rounds, 23 .25-caliber rounds, and 2 .22-caliber birdshot
    long bullets.  Five of the rounds were hollow point, a type of bullet designed to
9   do more damage on impact.  The serial number was scratched off the nine-
    millimeter gun.  Also in the briefcase were a sock and a wallet containing the
    business card of someone other than defendant.  No paper identifying
10  defendant was in the briefcase.  All three guns were in evidence, secured with
    plastic straps by the police so that the guns could not be fired.

11      Defendant stipulated that he "has been convicted of an offense
    enumerated in Penal Code section 12021.1([b])."[1]

12      Officer David Miller's preliminary examination testimony was read to
    the jury.  Officer Miller found a bindle containing a .48 grams of
13  methamphetamine in defendant's wallet.  An expert testified that this was a
    usable amount of methamphetamine.  Neither officer, Debeaubien or Kassel,
14  had observed a bindle in the wallet.  As the crime scene investigator, Officer
    Miller took the wallet and briefcase and their contents and booked them into
15  evidence at the Sunnyvale Department of Public Safety.

16      A blood sample was taken from defendant t the hospital at 10:23 p.m.
    The blood test revealed a blood alcohol level of .23 and the presence of
17  cocaine metabolites, which meant that defendant had consumed cocaine
    sometime between six to 72 hours earlier.  No methamphetamine was found
    in his blood.

18      Officer Debeaubien stayed with defendant at the hospital from about
19  7:30 p.m. until 1 a.m.  Defendant asked her what he was being charged with.
    She said possessing firearms and methamphetamine and being drunk in
20  public.  Defendant asked if she had found the cocaine.  She said she had not.
    Defendant said it was in his jacket.  She said there were several jackets in the
    car.  Defendant specified a black sport coat on the front seat.  Officer
21  Debeaubien called this information in to Lieutenant Tim Davis, who asked
    Officer Miller to check it out.

22      Officer Miller found a bindle containing 2.89 grams of cocaine in the
    pocket of a jacket that was draped over the driver's seat and covered with
23  vomit.  An expert testified that this was a usable amount of cocaine.

24      The parties stipulated, "David Miller was an officer with the Sunnyvale
    Department of Public Safety.  On July 3rd, 2002 he was fired for his alleged

25  ───────────────

26      [1]In this case the prosecutor sought to prove that defendant had a prior violent
    offense conviction of robbery that precluded him from possessing weapons or ammunition.
27  (Pen. Code § 12021.1.)  Defendant argued in limine that he could prevent the jury from
    hearing the details of his prior conviction by stipulating that he had a qualifying conviction.
28  The prosecutor agreed under *People v. Valentine* (1986) 42 Cal.3d 170, 177, and
    defendant entered the quoted stipulation.

1   involvement in helping houses of prostitution in the city of Sunnyvale.
2   Charges have been filed against him, but they do not include the allegations
    of fabrication of evidence.  The charges against him are allegations and are
    not evidence."
3           Defendant made a telephone call from the hospital to someone named
    "Tom."  Officer Debeaubien dialed the number for him and recognized the
4   area code as from southern California.

### TRIAL ARGUMENT

5           Defense counsel conceded that defendant had access to the car and
    its contents.  He argued to the jury that others also had access to the car and
6   they abandoned their efforts to help defendant when they heard the police
    had been called, because they knew what the briefcase contained.  Among
7   these "fair weather friends," he asserted, was the car's registered owner, Tom
    Miller.  He further argued that the jury should distrust hearsay evidence of
8   fired Officer David Miller about finding the methamphetamine in the
    defendant's wallet and the cocaine in his jacket.
9           Based on defendant's hospital telephone call to "Tom," the prosecutor
    argued that defendant had called Tom Miller, the car's owner, in southern
10  California, so Tom Miller could not have been among those present when
    defendant was discovered intoxicated in the car.

11  Resp. Ex. A (Unpublished Opinion of the California Court of Appeal, First Appellate District,

12  *People v. Jaffe*, No. H026265 (October 13, 2004)) at 2-5 (footnote in original).

13              **STANDARD OF REVIEW**

14
15          A district court may not grant a petition challenging a state conviction or sentence on

16  the basis of a claim that was reviewed on the merits in state court unless the state court's

17  adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

18  unreasonable application of, clearly established Federal law, as determined by the

19  Supreme Court of the United States; or (2) resulted in a decision that was based on an

20  unreasonable determination of the facts in light of the evidence presented in the State court

21  proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to

22  mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000),

23  while the second prong applies to decisions based on factual determinations, *Miller-El v.*

24  *Cockrell*,  537 U.S. 322, 340 (2003).

25          A state court decision is "contrary to" Supreme Court authority, that is, falls under the

26  first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

27  reached by [the Supreme] Court on a question of law or if the state court decides a case

28  differently than [the Supreme] Court has on a set of materially indistinguishable facts."

United States District Court

For the Northern District of California

1   *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application

2   of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

3   identifies the governing legal principle from the Supreme Court's decisions but

4   "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The

5   federal court on habeas review may not issue the writ "simply because that court concludes

6   in its independent judgment that the relevant state-court decision applied clearly

7   established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must

8   be "objectively unreasonable" to support granting the writ. *Id.* at 409.

9       Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

10  determination will not be overturned on factual grounds unless objectively unreasonable in

11  light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at

12  340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

13      When there is no reasoned opinion from the highest state court to consider the

14  petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*,

15  501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th

16  Cir.2000).

17                                **DISCUSSION**

18      As grounds for habeas relief petitioner asserts that: (1) his right to due process was

19  violated when the prosecutor failed to disclose information about a prosecution witness

20  prior to the preliminary hearing; (2) his attorney rendered ineffective assistance in failing to

21  seek to exclude the testimony of the foregoing prosecution witness on due process

22  grounds; (3) his attorney rendered ineffective assistance in failing to seek to exclude

23  hearsay evidence; (4) his attorney rendered ineffective assistance in failing to object to the

24  prosecutor's misstatement of the law during closing argument; (5) his attorney rendered

25  ineffective assistance in stipulating to elements of the charges which could not otherwise

26  be proven; (6) his attorney rendered ineffective assistance in failing to argue to the jury

27  about a discrepancy in the evidence regarding the weight of the drugs; (7) the trial court's

28  refusal to instruct the jury regarding petitioner's theory of the case violated his right to due

United States District Court

For the Northern District of California

1    process; (8) the denial of a jury trial as to certain sentencing factors violated his right to a

2    jury and to due process; (9) there was insufficient evidence to support certain of the drug

3    convictions; (10) the trial court's denial of his motion for disclosure of information about one

4    of the investigating police offers violated his right to due process; and (11) the cumulative

5    prejudice of the foregoing errors violated his right to due process.

6    **I.      Disclosure of Evidence Regarding Officer Miller**

7          Petitioner claims that his right to due process was violated because the prosecutor

8    failed to disclose prior to the preliminary hearing that Officer Miller was under investigation

9    for committing federal crimes.

10         Beginning in April 2000, Sunnyvale police officers assisted the F.B.I. in an

11   undercover investigation of Officer Miller's involvement with individuals running prostitution

12   operations in Sunnyvale.  CT at 71, 160-62.[2]  The preliminary hearing examination was

13   held in petitioner's case on April 10, 2002, at which Officer Miller testified that he found

14   methamphetamine in petitioner's wallet and cocaine in petitioner's jacket.  CT at 28, 34-35.

15   On July 22, 2002, Officer Miller was charged in a sealed complaint in federal court with

16   various counts of racketeering and interfering with commerce by threat and violence.  CT at

17   146-51.  On September 26, 2002, the prosecutor provided the superior court with

18   documents detailing the investigation of and pending charges against Officer Miller, and the

19   superior court turned the documents over to the defense the same day.  CT at 138.

20   Approximately three weeks later, the presentation of evidence began at petitioner's trial.

21   Because he was under federal indictment, Officer Miller exercised his Fifth Amendment

22   right not to testify at petitioner's trial, and due to his unavailability, Officer Miller's

23   preliminary hearing testimony was read to the jury.  RT at 349, 399-405.

24         In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the

25   suppression by the prosecution of evidence favorable to an accused upon request violates

26   due process where the evidence is material either to guilt or to punishment, irrespective of

27   _____

28        [2]"CT" refers to the Clerk's Transcript which is set forth in Respondent's Exhibit G.
     "RT" refers to the Reporter's Transcript, which is set forth in Respondent's Exhibit H.

**United States District Court**

For the Northern District of California

1   the good faith or bad faith of the prosecution." *Id.* at 87.  The Supreme Court has since

2   made clear that the duty to disclose such evidence applies even when there has been no

3   request by the accused, *United States v. Agurs*, 427 U.S. 97, 107 (1976), and that the duty

4   encompasses impeachment evidence as well as exculpatory evidence, *United States v.*

5   *Bagley*, 473 U.S. 667, 676 (1985).  Evidence is "material" under *Brady* "if there is a

6   reasonable probability that, had the evidence been disclosed to the defense, the result of

7   the proceeding would have been different.  A 'reasonable probability' is a probability

8   sufficient to undermine confidence in the outcome." *Id.* at 682.  "There are three

9   components of a true *Brady* violation: [t]he evidence at issue must be favorable to the

10  accused, either because it is exculpatory, or because it is impeaching; that evidence must

11  have been suppressed by the State, either willfully or inadvertently; and prejudice must

12  have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

13          The prosecutor was certainly required to disclose the evidence of Officer Miller's

14  involvement in the prostitution ring as this was impeachment evidence from which the jury

15  could infer that Officer Miller was not a credible or reliable witness.  Moreover, the

16  prosecution has a duty to learn of, and disclose, any exculpatory evidence known to others

17  acting on the government's behalf.  *See Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995).   As

18  the Sunnyvale police knew about the investigation, the evidence had to be disclosed to the

19  defense whether or not the district attorney knew about it.  *See Tennison v. City and*

20  *County of San Francisco*, 548 F.3d 1293, 1301 (9th Cir. 2008) (because *Brady* imposes a

21  duty on police officers as well as prosecutors to disclose exculpatory evidence, a *Brady*

22  violation occurs when the government fails to turn over evidence that is known only to

23  police investigators and not to the prosecutor).

24          The record is clear, however, that the evidence about Miller's criminal activity was in

25  fact disclosed to petitioner, three weeks before the presentation of evidence at trial.

26  Petitioner complains that the evidence was not disclosed before the preliminary hearing,

27  but the delayed disclosure does not violate due process.  Petitioner cites no authority from

28  the United States Supreme Court, or even the Ninth Circuit, requiring that *Brady* material

United States District Court

For the Northern District of California

1   be disclosed prior to a preliminary hearing, as opposed to later in the pretrial proceedings.

2   To the contrary, delays in disclosure of *Brady* material do not deprive an accused of due

3   process, such as where disclosure is made as late as the pretrial conference, *see Reiger v.*

4   *Christensen*, 789 F.2d 1425, 1432 (9th Cir. 1986), or even during trial where the disclosure,

5   though tardy, is still of value to the accused, *see United States v. Vgeri*, 51 F.3d 876, 880

6   (9th Cir. 1995); *see also United States v. Ruiz*, 536 U.S. 622 (2002) (due process does not

7   require disclosure of identity and impeachment evidence regarding government informants

8   early in pretrial proceedings).  Due process requires only the disclosure of exculpatory

9   material in sufficient time to permit defendant to make effective use of the material. *LaMere*

10  *v. Risley*, 827 F.2d 622, 625 (9th Cir. 1987).  In this case, petitioner received the

11  information regarding Miller in sufficient time for him to use it at trial as very damaging

12  impeachment evidence against Miller.  Specifically, the jury heard a stipulation that Miller

13  had been fired from the police force because he had been charged with crimes for his

14  involvement in assisting houses of prostitution in Sunnyvale.  Resp. Ex. A at 4.  Thus,

15  petitioner was able to undermine Miller's credibility and reliability effectively.  As the

16  prosecution disclosed the impeachment evidence of Miller early enough for petitioner to

17  make effective use of it to impeach Miller, there was no due process violation.

18          Furthermore, there was no prejudice in this case from the failure to disclose the

19  evidence prior to the preliminary hearing.  Prejudice will be found from a *Brady* violation if

20  the prosecutor's non-disclosure of favorable evidence caused the defendant to receive an

21  unfair trial, that is, if the missing evidence could reasonably be taken to put the whole case

22  in such a different light as to undermine confidence in the verdict.  *See Kyles*, 514 U.S. at

23  434-35.  Petitioner argues that if the evidence had been disclosed to the defense prior to

24  the preliminary hearing, Officer Miller would not have testified at the preliminary hearing.

25  This, petitioner argues, would have prevented the prosecutor from being able to present at

26  trial testimony by Officer Miller about finding methamphetamine in petitioner's wallet and

27  finding cocaine in petitioner's jacket.  Even assuming petitioner is correct in this regard,

28  Miller's preliminary hearing testimony at trial was largely duplicative of other, more credible

United States District Court
For the Northern District of California

1　testimony.  Officer Kassel testified that he saw Miller remove the items from petitioner's

2　wallet, including the bindle of methamphetamine.  RT at 296-99, 305-09.  Petitioner's

3　cocaine possession was established by the cocaine found in his blood, as well petitioner's

4　admission to Officer Debeaubien that he had cocaine in his jacket pocket, where she

5　directed Miller to find it.  Resp. Ex. A at 2-4, CT at 27.  Kassel and Debeaubien were more

6　credible witnesses than Miller in that they had not been impeached with evidence of being

7　fired based on federal criminal charges.  As Miller's preliminary hearing testimony was a

8　duplicative and relatively weak part of the evidence against petitioner, its absence would

9　have made little difference to petitioner's trial.  Therefore, the failure to disclose the Miller

10　impeachment evidence prior to the preliminary hearing did not prejudice petitioner by

11　undermining confidence in the jury's verdict.

12　　　Accordingly, petitioner is not entitled to habeas relief on this claim.

13　**II.　Ineffective Assistance of Counsel**

14　　　Petitioner makes five different claims that his Sixth Amendment rights were violated

15　due to ineffective assistance of counsel. A claim of ineffective assistance of counsel is

16　cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees

17　not only assistance, but effective assistance of counsel. *Strickland v. Washington*, 466

18　U.S. 668, 686 (1984). In order to prevail on a Sixth Amendment ineffectiveness of counsel

19　claim, petitioner must establish that counsel's performance was deficient, i.e., that it fell

20　below an "objective standard of reasonableness" under prevailing professional norms. *Id.*

21　at 687-88.  Second, he must establish that he was prejudiced by counsel's deficient

22　performance, i.e., that "there is a reasonable probability that, but for counsel's

23　unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

24　A reasonable probability is a probability sufficient to undermine confidence in the outcome.

25　*Id.*

26　　　It is unnecessary for a federal court considering a habeas ineffective assistance

27　claim to address the prejudice prong of the *Strickland* test if the petitioner cannot even

28　establish incompetence under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737

**United States District Court**

For the Northern District of California

1    (9th Cir. 1998).  Similarly, a court need not determine whether counsel's performance was

2    deficient before examining the prejudice suffered by the defendant as the result of the

3    alleged deficiencies.  *Strickland*, 466 U.S. at 697.

4              A.    Failure to Object to Officer Miller's Preliminary Hearing Testimony

5              Petitioner claims that counsel was ineffective in failing to object to the admission at

6    trial of Officer Miller's preliminary hearing testimony on due process grounds.  Defense

7    counsel did vigorously object to the admission of the preliminary hearing testimony, on the

8    grounds that at the time of the preliminary hearing the defense did not know, and could not

9    cross-examine Miller, about his criminal activity.  RT at 349-54.  The objection was

10   overruled.  *Id.* Petitioner complains that counsel did not object on the federal due process

11   grounds discussed above, namely that the prosecutor's failure to disclose the evidence of

12   Miller's criminal activity violated due process under *Brady* and its progeny.

13             For the reasons discussed above, however, there was no due process violation.

14   The prosecutor complied with due process by turning over the evidence prior to trial, and

15   due process did not require disclosure of the evidence earlier.  As a result, any due process

16   objection by counsel would have failed, and the failure to make a meritless objection is

17   neither ineffective nor prejudicial under *Strickland.  See United States v. Aguon*, 851 F.2d

18   1158, 1172 (9th Cir. 1998), *overruled on other grounds*, *Evans v. United States,* 504 U.S.

19   255 (1992); *see also Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir. 1985) (counsel's failure

20   to make meritless motion is not ineffective).  Consequently, petitioner cannot establish

21   ineffective assistance of counsel based on counsel's failure to make a meritless due

22   process objection to the admission of Miller's preliminary hearing testimony.

23             B.    Failure to Object to Hearsay Testimony Regarding Key in Ignition

24             Petitioner claims that trial counsel was ineffective in failing to object, on hearsay

25   grounds, to the admission of a bystander's statement that he found the keys in the ignition

26   of the car in which petitioner was found intoxicated.  Lieutenant Randy French testified that

27   when he arrived at the scene, an unnamed bystander handed him the car keys, and told

28   him that "we took them out of the ignition."  RT at 254.  The court initially sustained defense

United States District Court

For the Northern District of California

counsel's hearsay objection, the prosecutor rephrased the question, and defense counsel

objected again on hearsay grounds.  RT at 254-55.  After a bench conference, the trial

court sustained the objection, but defense counsel withdrew further objection when the

prosecutor rephrased the question again.  *Id.*  The prosecutor asked whether the bystander

said the keys were in the ignition and Lieutenant French answered, "Yes."  RT at 255-56.

Petitioner argues that trial counsel should have continued the objection, and that his failure

to do so was prejudicial because the keys in the ignition showed that petitioner had

possession and control of the car and the contraband found inside.

The California Court of Appeal found that, even assuming trial counsel should have

continued to object to the evidence, there was no prejudice:

> The statement put the key in the ignition, not on defendant's person.
> That the key was in the ignition originally was also inferable from the
> testimony of Gaddi Ittah that the car was running when he first found
> defendant.  In argument to the jury, defense counsel acknowledged that,
> when defendant was found, "the key is there, and it's running."  The existence
> of a key in the ignition did not establish that defendant put it there.
> Defendant's connection to the car was shown by his presence in the
> car, his mail in the trunk, his clothing in the passenger compartment, his
> knowledge of cocaine in the pocket of his jacket in the car, and defendant's
> southern California residence being near where the car was registered to
> another owner.  In light of this strong evidence of defendant's long use of the
> car, we conclude that defendant was not prejudiced by the admission of the
> bystander's explanation for having the car keys.

Resp. Ex. A at 16-18.

The California Court of Appeal's reasoning is persuasive.  Petitioner's possession

and control of the car was not established by the key being in the ignition, as anyone could

have put the key in the ignition.  Rather, it was the evidence that petitioner was found lying

part of the way in the driver's seat, with the car running and a large amount of personal

belongings and mail inside the car that indicated petitioner had possession and control of

the car and its contents at the time he was found.  In any event, that the key was in the

ignition was already apparent from Ittah's testimony that the car was running when he

found petitioner.  As a result, there is no reasonable likelihood that the evidence that the

key was in the ignition had any impact on the outcome of the trial, and thus defense

counsel's withdrawal of his objection to such evidence did not prejudice petitioner under

**United States District Court**
For the Northern District of California

1    *Strickland*.

2        C.    <u>Failure to Object to Prosecutor's Statement in Closing Argument</u>

3        Petitioner claims that defense counsel was ineffective in failing to object to the

4    prosecutor's misstatement of the law during closing argument regarding whether the guns

5    had to be operable.  In Counts 3 and 4, petitioner was charged with possession of cocaine

6    while armed with loaded, operable firearms (Cal. Health and Safety Code § 11370.1).  The

7    jury was instructed pursuant to CALJIC No. 12.52 that these charges required proof of,

8    among other things, that petitioner possessed a "loaded, operable firearm."  RT at 447.

9        The California Court of Appeal described the prosecutor's argument with respect to

10   this point as follows:

11           Argument to the jury followed the court's instructions about the
         elements of the charged offenses.  In opening argument to the jury, the
12       prosecutor displayed CALJIC No. 12.52 and mentioned the five elements,
         including possession of cocaine "while they were armed with a loaded,
13       operable firearm."  Defense counsel conceded that the guns were loaded, but
         argued to the jury that there was no expert testimony about the guns being
14       operable.  In closing argument, the prosecutor responded, "There's no
         dispute either that, real dispute, these guns aren't operable.  And, by the way,
15       the word 'operable' isn't in the jury instructions.  You can look through them.
         [¶] But if there's a doubt, fire one.  Ask the judge for permission.  It's not in the
16       instruction anyway.  But they have the opportunity to ask questions about that
         if they thought they weren't real weapons."
17           There was no objection to the prosecutor's misstatement of the instruction.

18   Resp. Ex. A at 12.  The California Court of Appeal went on to find no prejudice from

19   counsel's failure to object because the trial court had given the jury accurate instructions

20   that operability was an element of the offense and that any argument by counsel that

21   conflicted with the court's instructions should be ignored.  *Id.* at 12-13.

22       The state court's finding of no prejudice is correct.  "[A]rguments of counsel

23   generally carry less weight with a jury than do instructions from the court.  The former are

24   not evidence, and are likely viewed as the statements of advocates; the latter, we have

25   often recognized, are viewed as definitive and binding statements of the law." *Boyde v.*

26   *California*, 494 U.S. 370, 384-85 (1989) (citations omitted). The record demonstrates that

27   the trial court correctly instructed the jury, pursuant to CALJIC No. 12.52 that they had to

28   find the firearms operable in order to convict petitioner on Counts 3 and 4.  RT at 447.

United States District Court

For the Northern District of California

1  Under *Boyde*, the trial court's instruction outweighed the prosecutor's misstatement.

2  Moreover, the trial court instructed the jury pursuant to CALJIC No. 1.00 that "If anything

3  concerning the law said by the attorneys in their argument or at any other time during the

4  trial conflicts with my instructions on the law, you must follow my instructions."  RT at 433.

5  Juries are presumed to follow its instructions.  *See Weeks v. Angelone*, 528 U.S. 225, 234

6  (2000).  In addition, defense counsel, as well as the prosecutor during opening argument,

7  argued to the jury that the firearms had to be operable.

8       As the trial court instructed the jury that it had to find the weapons operable in order

9  to convict petitioner, the prosecutor's misstatement of the law in closing argument  was

10  unlikely to have any impact on the verdict.  Accordingly, defense counsel's failure to object

11  to the prosecutor's argument was not prejudicial under *Strickland*.

12          D.    Stipulating to Prior Felony Conviction

13       Petitioner claims that trial counsel was ineffective in entering into a stipulation

14  regarding his prior felony conviction.  Petitioner was charged in Counts 5 and 6 of being an

15  ex-convict in possession of a firearm under California Penal Code § 12021.1, and in Count

16  7 of being an ex-convict in possession of ammunition under California Penal Code § 12316.

17  Prior to trial, the parties entered a stipulation that petitioner's prior federal conviction for

18  bank robbery satisfied the prior conviction element of §§ 12021.1 and 12316.  RT at 11-12,

19  448-49.  Petitioner argues that this was a "patent" instance of ineffective assistance of

20  counsel because petitioner's prior federal conviction does not, as a matter of California law,

21  qualify as a prior conviction for purposes of §§ 12021.1 and 12316.

22       The California Court of Appeal rejected petitioner's claim by holding, as a matter of

23  state law, that a prior federal conviction for bank robbery satisfies the prior conviction

24  element of §§ 12021.1 and 12316.  Resp. Ex. A at 15-16.  A state court's interpretation of

25  state law, including one announced on direct appeal of the challenged conviction, binds a

26  federal court sitting in habeas corpus.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks*

27  *v. Feiock*, 485 U.S. 624, 629 (1988).  Even a determination of state law made by an

28  intermediate appellate court must be followed by a federal court on habeas review.  Id. at

United States District Court
For the Northern District of California

630 n.3.  Therefore, this court is bound by the interpretation of state law by the California

Court of Appeal that petitioner's federal conviction for bank robbery satisfies the prior

conviction element of §§ 12021.1 and 12316.  Consequently, counsel's stipulating as much,

besides preventing the jury from hearing the unfavorable details of petitioner's bank

robbery conviction, reflected a correct understanding of state law.  As such, entering the

stipulation was neither deficient nor prejudicial under *Strickland*.

        E.      <u>Lack of Argument Regarding Weight of Drugs</u>

       Petitioner claims that defense counsel failed to argue to the jury that there was a

discrepancy between the weight of drugs reported by Officer Miller and the weight reported

by the criminologist at the crime lab.  In his report, which was entered into evidence, Officer

Miller listed the net weight of methamphetamine as 1.7 grams, and the net weight of

cocaine as 4.7 grams.  RT at 331-36, CT at 102.  By contrast, the criminologist found that

the net weight of the methamphetamine was .48 grams, and the net weight of the cocaine

was 2.89 grams.  RT at 31, 383-84.  Petitioner argues that defense counsel should have

argued that this discrepancy showed that Officer David Miller was incompetent and lacking

in credibility.

       The jury had Miller's police report, as well as the criminologist's testimony, and thus

it had the evidence of both sets of figures about the weight of drugs.  During closing

argument, defense counsel asked the jury "what did David Miller do with [the drugs] before

he brought it?"  RT at 500.  Thus, the record shows that during closing argument defense

counsel did in fact raise to the jury the possibility that Officer Miller mishandled the drugs.

       Furthermore, there would have been little, if any, benefit to defense counsel arguing

further about the discrepancy in the reported weights of the drugs.  First, the discrepancy

did not have any bearing on whether petitioner possessed a usable quantity of drugs.  The

expert testimony that there was a usable amount of drugs was based on the lower

quantities reported by the criminologist, and so there was no need for the jury to find that

petitioner had the higher quantities in Officer David Miller's report.  RT at 390-93.

Moreover, counsel hardly needed to argue about the discrepancy in the report in order to

United States District Court

For the Northern District of California

1    discredit Officer Miller, as Officer Miller's incompetence and lack of credibility had already

2    been amply demonstrated by the evidence linking him to a prostitution ring in Sunnyvale.

3    Finally, for the reasons discussed above, discrediting Officer Miller's testimony was unlikely

4    to have made an impact on the verdict because his testimony was duplicative of the more

5    reliable testimony of Officers Kassel and Debeaubien regarding the drugs found in

6    petitioner's possession.  Under these circumstances, the state courts could have

7    reasonably concluded that further argument about the discrepancy in the reported weights

8    of the drugs would have  been only a tangential benefit, if any, to petitioner.  Accordingly,

9    counsel's failure to argue about this issue was neither deficient nor prejudicial, and the

10   state courts reasonably rejected this claim of ineffective assistance of counsel.

11   **III.    Jury Instruction Regarding Possession of Contraband**

12         Petitioner claims that the trial court violated his right to due process by denying his

13   request to give a special instruction regarding the possession element of the charged

14   offenses.  Petitioner requested the following instruction: "Access to the items at issue,

15   without more, is insufficient to support a finding the defendant was in possession of those

16   items."  CT at 308, RT at 425-26. The trial court denied the request because the proposed

17   instruction was "vague and confusing," and was already addressed by the existing

18   instructions.  RT at 427-28.

19         A state trial court's refusal to give an instruction violates a petitioner's right to due

20   process if the evidence supported the instruction or it was necessary to convey a defense

21   theory of the case.  *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988); *see also*

22   *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (error to deny defendant's request for

23   instruction on defense theory of simple kidnaping where such instruction was supported by

24   the evidence).  The omission of an instruction is less likely to be prejudicial than a

25   misstatement of the law.  *Walker v. Endell*, 850 F.2d at 475-76 (citing *Henderson v. Kibbe*,

26   431 U.S. 145, 155 (1977)).  Thus, a habeas petitioner whose claim involves a failure to give

27   a particular instruction bears an "'especially heavy burden.'"  *Villafuerte v. Stewart*, 111

28   F.3d 616, 624 (9th Cir. 1997) (quoting *Henderson* , 431 U.S. at 155).  An examination of

United States District Court
For the Northern District of California

1  the record is required to see precisely what was given and what was refused and whether

2  the given instructions adequately embodied the defendant's theory.  *Murtishaw v.*

3  *Woodford*, 255 F.3d 926, 971 (9th Cir. 2001); *United States v. Tsinnijinnie*, 601 F.2d 1035,

4  1040 (9th Cir. 1979).

5       Here, petitioner's defense theory was that the drugs, guns and ammunition were not

6  his, but rather belonged to others, including the "fair weather friend" who owned the car.

7  Therefore, he requested an instruction to the jury that his access to the contraband was not

8  enough on its own to constitute possession.  An examination of the instructions that were

9  given, however, reveals that they already informed the jury that it had to find more than

10  mere access in order to find possession.  Specifically, the jury was instructed that it had to

11  find that petitioner "knowingly exercised direct physical control" over the contraband, or that

12  he "knowingly exercised control over or the right to control a thing, either directly or through

13  another person or persons."  CT at 286-91, RT 445-49 (instructing the jury pursuant to

14  CALJIC No. 12.00).  In addition, the jury was instructed that in the case of drugs, petitioner

15  had to know they were a "controlled substance."  CT at 286-88, RT 445-47.  From these

16  instructions, the jury would clearly know that petitioner had to "knowingly" control, either

17  directly or indirectly, the contraband, and that his mere access to it, without more, would not

18  constitute possession.  Thus, the instructions that were given adequately embodied

19  petitioner's defense theory that if petitioner only had access to the contraband, he did not

20  "possess" it.  The trial court's denial of petitioner's additional instruction on this point did not

21  deprive petitioner of due process.

22       Accordingly, the state courts' denial of this claim was neither contrary to nor an

23  unreasonable application of federal law, and petitioner is not entitled to habeas relief on this

24  claim.

25  **IV.    Sentencing**

26       Petitioner claims that the trial court violated his Sixth Amendment right to trial by jury

27  as set out in *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004), by imposing the upper

28  term on Count 3, and then doubling that term for a previous strike, based on factors not

United States District Court

For the Northern District of California

1   found by a jury beyond a reasonable doubt.

2   At sentencing, petitioner received an eight-year term on Count 3 (possession of

3   cocaine while armed with a 9 millimeter handgun), consisting of the upper term of four

4   years that was then doubled based on petitioner's prior serious felony conviction (Cal. Pen.

5   Code § 1170.12).  CT at 434.   Petitioner also received a consecutive term of sixteen

6   months on count 7 (being an ex-convict in possession of ammunition), and the sentences

7   on the remaining counts were run concurrently.[3]  CT at 434-35.  The trial court imposed the

8   upper term sentence on Count 3 pursuant to California Rule of Court 421 after finding the

9   following aggravating factors: petitioner was on parole at the time of the offense, he had

10  served a prior prison term, his prior convictions are numerous and of increasing

11  seriousness, and he was convicted of other crimes for which he was receiving concurrent

12  sentences.  RT at 546-47; Resp. Ex. A at 31; *see* Cal. Rules of Court 4.421(a)(7),(b)(2) -

13  (4).

14  In *Apprendi*, the Supreme Court held that any fact that increases the penalty for a

15  crime beyond the prescribed statutory maximum must be submitted to a jury and proved

16  beyond a reasonable doubt.  *Apprendi*, 530 U.S. at 466.  In *Blakely*, the Supreme Court

17  explained that "the statutory maximum for *Apprendi* purposes is the maximum sentence a

18  judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by

19  the defendant."  *Blakely*, 542 U.S. at 303.  This means that the "the middle term prescribed

20  in California's statutes, not the upper term, is the relevant statutory maximum."

21  *Cunningham v. California*, 127 S. Ct. 856, 868 (2007).  In *Cunningham*, the Supreme Court,

22  citing *Apprendi* and *Blakely*, held that California's Determinate Sentencing Law violates a

23  defendant's right to a jury trial to the extent that it contravenes "*Apprendi's* bright-line rule:

24  Except for a prior conviction, 'any fact that increases the penalty for a crime beyond the

25  statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt.'"

26

27

28

[3]The sentence on Count 2 was stayed and then vacated on appeal.

United States District Court

For the Northern District of California

*Id.* (quoting *Apprendi*, 530 U.S. at 490).[4]

There is no constitutional error in this case for two reasons.  First, the prior conviction exception to the general rule in *Apprendi*, providing that the fact of a prior conviction need not be pleaded in an indictment or proved to a jury beyond a reasonable doubt, applies.  *Butler*, 538 F.3d at 643 (citing *Apprendi*, 530, U.S at 490 and *Almendarez-Torres v. United States*, 523 U.S. 224, 244 (1998)).  The Ninth Circuit has recognized that "the Supreme Court has not overruled the *Almendarez-Torres* exception for prior convictions" and therefore the "obligation to apply the *Almendarez-Torres* exception [remains] unless and until it is rejected by the Supreme Court."  *Butler*, 528 F.3d at 643-44.  Here, petitioner was sentenced to the upper term of four years based on several aggravating factors – one of which is that he had prior convictions.  When sentencing, the trial court cited the fact that petitioner had "numerous" prior convictions.  RT at 546-47; *see* Cal. Rule Ct. 4.421(b)(2).  The doubling of petitioner's upper term sentence under the California Penal Code § 1170.12 also was based on the fact that petitioner had a prior conviction.  CT at 435.  Petitioner's prior convictions clearly fall into the "prior conviction" exception from *Almendarez-Torres* and *Apprendi*.  As such, petitioner was not entitled to a jury determination of that aggravating circumstance.  Therefore, consistent with the Sixth Amendment, petitioner's prior convictions could be considered by the trial court in imposing the upper term sentence and doubling it without a jury determination beyond a reasonable doubt.

The fact that the trial court also found additional aggravating circumstances – such as petitioner's status on parole at the time he committed the offense, that he had served a prior prison term, and that he had been convicted of other crimes for which he could have received consecutive sentences – does not alter this conclusion.  "[U]nder California law,

---

[4]*Cunningham* applies retroactively on collateral review only to convictions that became final on direct review after the decision in *Blakely*, on June 24, 2004. *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008).  The conviction in this case became final for purposes of retroactivity when the time for filing a petition for a writ of certiorari in the United States Supreme Court expired, i.e. on December 7, 2005, ninety days after the California Supreme Court's denial of the petition for direct review.  Thus, *Cunningham* applies retroactively to the instant case.

United States District Court

For the Northern District of California

only one aggravating factor is necessary to set the upper term as the maximum sentence." *Butler*, 528 F.3d at 641. "[I]f at least one of the aggravating factors on which the judge relied in sentencing [petitioner] was established in a manner consistent with the Sixth Amendment, [petitioner's] sentence does not violate the Constitution." *Id.* at 643. Therefore, as it was within the trial court's discretion to sentence petitioner to the upper term and then double it based solely upon his prior convictions, petitioner's sentence is constitutional irrespective of "[a]ny additional factfinding" with respect to additional aggravating circumstances. *Id.* Because the trial court relied upon at least one factor "established in a manner consistent with the Sixth Amendment," the sentence petitioner received did not violate his Sixth Amendment rights.

The upper term sentence was constitutional for a second reason. Petitioner admitted the existence of two aggravating factors, namely that he had a prior prison term (Cal. Rule Ct. 4.421(b)(3)) and that he was on parole at the time of his offense (Cal Rule Ct. 4.421(b)(4)). As noted above, "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict *or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (emphasis added). As petitioner admitted the existence of two aggravating factors that on their own support the upper term under California law, the trial court's imposition of the upper term sentence did not exceed the "statutory maximum" under *Apprendi* and *Blakely*.[5] Because the upper term sentence was within the maximum term allowed by California law based on facts found by the jury and admitted by petitioner, the sentence did not violate petitioner's Sixth Amendment rights.

Accordingly, the state courts' denial of this claim was neither contrary to nor an unreasonable application of federal law and petitioner is not entitled to habeas relief on this claim.

_____

[5]As there was no error, the court need not reach respondent's additional argument that this claim was not exhausted.

United States District Court

For the Northern District of California

### V.   Sufficiency of Evidence Of Firearm Convictions

Petitioner claims that his convictions for being a felon in possession of firearms (Counts 3 and 4) violated his right to due process because there was insufficient evidence that the firearms were operable.  As discussed above, an essential element of these offenses is that the firearm be loaded and operable.  *See* CALJIC No. 12.52; Cal. Health & Safety Code § 11370.1.  Petitioner argues that no expert testified that the loaded nine-millimeter and .25-millimeter handguns found in the car with petitioner had been tested and were operable, and, due to safety straps put on the guns at trial, the jury could not test them.

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  A state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt therefore states a constitutional claim, *Jackson v. Virginia*, 443 U.S. 307, 321 (1979), which, if proven, entitles him to federal habeas relief, *id.* at 324.  The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  *Id.* at 324

The California Court of Appeal, applying the foregoing federal standard, found sufficient evidence based on the following reasoning:

> In our case, though defendant was not seen to operate either handgun, there was circumstantial evidence that the guns were operable.  Both guns were loaded when the police found them.  Extra rounds for each gun were nearby.  The guns and ammunition were in a briefcase on the floor near the driver's seat occupied by defendant.  It would be irrational for someone to have obtained, loaded, and kept extra rounds for an inoperable weapon.  Moreover, the jury examined the guns during deliberations.  Though plastic straps prevented firing the guns, their appearance presumable raised no reasonable doubt about their inoperabiliity.  Viewing this evidence in a light favorable to the judgment[], we conclude that there was substantial evidence that each gun was operable[].

Resp. Ex. A at 11.  In addition to the circumstantial evidence described by the Court of

United States District Court

For the Northern District of California

Appeal, there was additional circumstances leading to the inference that the guns were operable.  The serial number had been scratched off of the guns, which someone would be likely to do if they intended to use the guns.  Tools designed to clean an electric razor and a sock were found in the briefcase with the guns; the tools could also have been used to clean the guns and the sock could be used to handle the guns without leaving fingerprints. Finally, because of the common association of guns and drugs, the presence of drugs in the car and in petitioner's blood stream could also suggest that the guns being carried in the car were operable.  Overall, it is unlikely that a car driver would keep loaded guns and extra ammunition within reach, scratch off the serial numbers, and keep cleaning tools and a sock with the gun if the guns did not work.  Therefore, the state courts could reasonably conclude that the circumstantial evidence, particularly when viewed in a light most favorable to the prosecution, were sufficient for a rational juror to find beyond a reasonable doubt that the loaded guns were operable.

Accordingly, the state courts' denial of this claim was neither contrary to nor an unreasonable application of federal law and petitioner is not entitled to habeas relief on this claim.

## VI.   Disclosure of Citizens Complaints Against Officer Miller

Prior to trial, petitioner filed a motion for discovery of any personnel records of Officer David Miller concerning citizen complaints of fabrication of evidence, false testimony, or false information in police reports.  CT at 86.  The trial court conducted an in camera hearing on his motion, reviewed Officer Miller's personnel file, and found that it contained no complaints related to the fabrication of evidence, false testimony or false information in police reports.  Resp. Ex. A at 21; Resp. Ex. J (under seal).  As such, the trial court found no discoverable information in the file.  *Id.*  As the transcript of the in camera hearing was sealed, petitioner did not have access to it on appeal, so he requested that the California Court of Appeal to review it for any error by the trial court.  After reviewing the hearing transcript, the California Court of Appeal found that the trial court had not abused its discretion in finding that the personnel file contained no relevant or discoverable information.  *Id.*  In the present petition, petitioner now asks this court to review the

21

transcript to determine whether there was any discoverable material.

As discussed above, the prosecutor has a duty to disclose to the defense that is "material" to a defendant's guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). This encompasses impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 (1985).  Evidence is "material" under *Brady* if its non-disclosure the defendant to receive an unfair trial, that is, if the missing evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. *Kyles*, 514 U.S. at 434-35.  This court has reviewed the sealed transcript and finds it contained no information relating to complaints of fabricated evidence, false testimony, or false information in police reports by Officer Miller, the theory petitioner wanted to use the discovery for at trial.  As such, the state courts reasonably concluded that the file contained no "material" or discoverable information under *Brady*.

Accordingly, petitioner is not entitled to habeas relief on this claim.

**VII.    Cumulative Error**

Petitioner claims that the cumulative effect of all of the foregoing asserted trial errors caused his trial to be fundamentally unfair, in violation of his right to due process. Petitioner cites no Supreme Court precedent, and the court is aware of none, providing that the cumulative effect of multiple alleged errors may violate a defendant's due process right to a fair trial.  As discussed above, AEDPA mandates that habeas relief may be granted only if the state courts have acted contrary to or have unreasonably applied federal law as determined by the United States Supreme Court. *Williams v. Taylor*, 529 U.S. at 412 ("Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence.").  Consequently, in the absence of Supreme Court precedent recognizing a due process theory of "cumulative error," habeas relief cannot be granted on such a claim.

In any event, there is no cumulative error in this case.  The errors the court has assumed occurred in this case were counsel's withdrawing his objection to the bystander's statement that the key was found in the ignition, and counsel's failure to object to the prosecutor's mischaracterization of the jury instruction as not requiring the guns to be operable.  For the reasons discussed, these errors were not independently prejudicial.  The

United States District Court

For the Northern District of California

evidence that the key was in the ignition was duplicative of the witness testimony that the car was running, and was in any event a very insignificant part of the evidence that petitioner had possession of the car and its contents.  The jury was clearly instructed that it had to find the guns operable and that the prosecutor's argument to the contrary should be ignored.  In short, if these assumed errors had any impact on the trial, it was very minor; as the California Court of Appeal correctly found, "Their whole did not outweigh the sum of their parts."  Resp. Ex. A at 37.  Consequently, the effect of the two assumed errors did not render the trial fundamentally unfair in violation of due process under a cumulative error theory.

Accordingly, petitioner is not entitled to habeas relief on this claim.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 30, 2009.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.05\Jaffe4439.RUL.wpd

23